IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DR. EUNA McGRUDER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Jury Demand |
| | ) | |
| METRO GOVERNMENT OF | ) | |
| NASHVILLE AND DAVIDSON COUNTY | ) | |
| d/b/a Metro Nashville Public Schools | ) | |
| | ) | |
| Defendant | ) | |

## COMPLAINT

This is the second lawsuit for unlawful retaliation by Dr. Euna McGruder ("Plaintiff" or "Dr. McGruder") against the Metropolitan Government of Nashville ("Defendant" or "Metro" or "MNPS"). In December 2021, a jury determined that MNPS fired Dr. McGruder in retaliation for opposing race discrimination and hostile work environment on behalf of students and teachers. She was awarded monetary damages and non-monetary legal remedies – including reinstatement. But the retaliation did not stop after Dr. McGruder defeated Metro/MNPS at trial.

Motivated by retaliatory animus in response to post-employment protected acts, MNPS/Metro targeted Dr. McGruder with abuses of process and other bad-faith behavior to: (1) deny Plaintiff reinstatement to her former job, as awarded by this Court; (2) dodge accountability for the legal remedies awarded to Plaintiff; and (3) punish Plaintiff for prevailing at trial and continuing to oppose its unlawful employment practices post-employment. Defendant's post-trial acts were performed with unclean hands and improper motives. The aggressions targeted at Plaintiff are punitive, actionable, and sufficiently severe to dissuade an employee from exercising entitled rights and protections under Title VII. For her Complaint, Plaintiff states the following:

## PARTIES

1. Dr. Euna McGruder is an adult citizen and resident of the State of Georgia. Plaintiff is a former [and awarded-prospective] employee of Metro Nashville Public Schools.

2. Metropolitan Government of Nashville is a government entity who maintains a school system (MNPS) and legal department, who receive state and federal funds for operations.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1332.

4. Venue is proper under 28 U.S.C. § 1391(b).

5. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and she files this action timely pursuant to her receipt of a Notice of Suit Rights.

## FACTUAL ALLEGATIONS

1. Shortly before the start of the 2015-2016 school year, Metro Nashville Public Schools hired Dr. McGruder as its Executive Officer of Priority Schools.

2. The Executive Officer of Priority Schools is a Central Office leadership position.

3. Dr. McGruder received six-figure salary and significant signing bonus from MNPS.

4. Dr. McGruder was selected over many qualified candidates, and she joined MNPS with over twenty years of school and district leadership experience.

5. During her tenure at MNPS, Dr. McGruder received positive performance feedback from superiors and peers; implemented innovative plans to improve priority schools; and did not receive a single derogatory written reprimand for performance or misconduct.

6. Between November 2015 and early January 2016, Dr. McGruder investigated and opposed discovered incidents of race discrimination and a hostile work environment affecting teachers and students at Madison Middle School.

7. On January 15, 2016, MNPS fired Dr. McGruder in retaliation for investigating and opposing discrimination and hostile work environment on behalf of teachers and students at Madison Middle School.

8. MNPS/Metro unlawfully retaliated against Plaintiff in violation of her Title VII rights.

9. The unlawful termination of Dr. McGruder caused her to suffer severe professional, emotional, and economic harms that ultimately forced her into personal bankruptcy.

10. In Dec. 2017, Dr. McGruder filed a lawsuit for Title VII violations against Metro/MNPS. *McGruder v. Metro Gov't of Nashville*, Case No. 3:17-cv-01547. ("*McGruder I*").

11. *McGruder I* was actively litigated for four (4) years before the trial was held – from December 2017 through December 2021.

12. Metro/MNPS had ample opportunity, the ability, and the resources to discover and develop record evidence about bankruptcy filings and assert a timely judicial estoppel argument to the district court. On its own volition or negligence, Metro/MNPS did neither before the December 2021 trial.

13. Due to its own voluntary acts or omissions, Metro/MNPS was unaware of any information upon which: (1) to believe that Plaintiff had ever filed for bankruptcy; or (2) to assert an argument of judicial estoppel before the December 2021 trial.

14. On or about December 1, 2021, the jury trial for *McGruder I* began before the Hon. Judge William L. Campbell, Jr. ("Judge Campbell").

15. MNPS/Metro did not raise the issue of bankruptcy or make a Rule 50 motion on judicial estoppel grounds during the December 2021 trial.

16. On December 6, 2021, the jury determined that Defendant unlawfully retaliated against Dr. McGruder and awarded her compensatory damages of $260,000.00.

17. The verdict in *McGruder I* received significant media coverage, which exposed the school system's misconduct to the public and sparked hostility by MNPS/Metro against Dr. McGruder as a product of the litigation.

18. Dr. McGruder harbored no hostility towards MNPS or any present Central Office official. By December 2021, the individuals responsible for her unlawful termination (Vanessa Garcia and Katie Cour) were no longer employed with MNPS.

19. In December 2021, the "same job that Plaintiff was doing in 2015-16" existed at MNPS.

20. In December 2021, the "same job that Plaintiff was doing in 2015-16" was available for non-interim appointment and/or the reinstatement of Dr. McGruder – following the retirement of Sharon Griffin from the job at-issue in the fall of 2021.

21. Plaintiffs who prove discrimination in violation of Title VII are presumptively entitled to reinstatement unless exceptional circumstances make the chances for a satisfactory employment relationship unlikely under Title VII.

22. Defendant did not present proof of exceptional circumstances that would make Plaintiff's chances for a satisfactory prospective employment relationship with MNPS unlikely.

23. On December 14, 2021, Plaintiff petitioned the Court for an award of the non-monetary remedy of reinstatement to her former job at MNPS (or a comparable position).

24. After December 14, 2021, Defendant was aware that Plaintiff had a substantial claim of entitlement to her former job as a legal remedy pending judicial determination by the Court.

25. Between December 14, 2021 and August 18, 2022, Plaintiff's petition for the non-monetary remedy of reinstatement remained undecided the district court.

26. Post-trial, Metro/MNPS performed multiple bad-faith acts and abuses of process in an effort to preclude Plaintiff from returning to the school system driven by improper motives and retaliatory animus.

27. Defendant vehemently opposed Plaintiff's petition for reinstatement, which is its right. But, in its efforts to oppose reinstatement, Defendant made material misrepresentations of known facts to mislead the Court into denying Plaintiff's reinstatement petition – which it had no right to do and constituted bad-faith and breach of its duty of candor to the court.

28. Despite its awareness that the job at-issue was "available" for non-interim appointment, Defendant made a flagrantly false representations to the Court in January 2022 that the job at-issue was "unavailable" and demand displacement of a district employee.

29. Despite its admitted-awareness in some pleadings that MNPS continued to maintain "the same job that Plaintiff was doing in 2015-16," Defendant made contradicting claims in other pleadings that the job at-issue is "now defunct" in an effort to dodge reinstatement on false and bad-faith pretenses.

30. Despite its awareness that Dr. McGruder had a substantial claim of entitlement to her former job pending judicial review, Defendant maliciously acted to make the "available" job at-issue "unavailable" while the reinstatement petition remained pending judicial determination.

31. In the spring of 2022, MNPS appointed Renita Perry to the job at-issue in a non-interim capacity, and it did so for the bad-faith purpose of manufacturing an argument that the job was "unavailable" or "demand displacement" if reinstatement were later awarded.

32. The post-trial actions of MNPS were improperly performed with malicious motives, constitute abuses of the legal process, and reflect a misuse of government resources while acting under the color of state law.

33. The post-trial actions of MNPS were retaliatory and targeted at Plaintiff for: (1) prevailing in *McGruder I*; (2) continuing to oppose its unlawful employment practices; and (3) performing multiple post-employment protected acts in pursuit of justice, reinstatement, and other available legal remedies.

34. In the 2022 summer, the district court issued a series of orders averse to the interest of MNPS – including a $287,700.00 attorney's fee award and grant of a new trial on entitled backpay damages.

35. Between July and early August 2022, Defendant was receptive to the prospect of settlement of all remaining issues and engaged in cordial communications on the subject of potential settlement.

36. Then on August 18, 2022, everything changed.

37. On August 18, 2022, Judge Campbell awarded Plaintiff the non-monetary remedy of reinstatement to her former job. The district court ordered "the remedy of reinstatement to her prior position or comparable central office position with Metro within thirty (30) days from the date of entry of this Order."

38. In continued opposition to MNPS's unlawful employment practices, Plaintiff provided written notice to Metro/MNPS of her intent to return to MNPS via reinstatement pursuant to the Reinstatement Order on August 22, 2022.

39. In response, Metro/MNPS: (1) refused-to-hire or reinstate Plaintiff; (2) refused to further engage settlement or resolution discussions; (3) targeted Plaintiff with hostile and

6

Case 3:23-cv-01323    Document 1    Filed 12/14/23    Page 6 of 11 PageID #: 6

antagonistic communications; and (4) took steps to initiate frivolously-based legal maneuvers and abuses of process to deprive Dr. McGruder of the legal remedies awarded in *McGruder I.*

40. With unclean hands and improper motives, MNPS weaponized the legal process to rob Plaintiff of awarded legal remedies – including, and especially, reinstatement.

41. Defendant did not hide its improper, bad-faith, and retaliatory motives driving its anticipated legal maneuvers. In fact, Defendant admitted in written correspondence:

> "We're not going to be able to work out a settlement. **Whatever chances there were earlier just got blown up by the court's order of reinstatement last week.** We're going to seek an immediate appeal of that decision…."

42. On August 25, 2022, MNPS filed: (a) a Notice of Appeal to the Sixth Circuit ("Notice of Appeal"); and (b) Motion to Stay Reinstatement pending appeal to the Sixth Circuit ("Motion to Stay").

43. The Notice of Appeal: (1) identified the propriety of the Reinstatement Order as its sole basis for appeal; and (2) did not mention bankruptcy or judicial estoppel as grounds for the appeal.

44. As of August 25, 2022, Defendant had no information upon which to assert a claim of judicial estoppel.

45. Prior to August 25, 2022, Defendant had not researched Plaintiff's bankruptcy filings or asserted a judicial estoppel argument.

46. Prior to August 25, 2022, Defendant had not been sufficiently motivated to perform bankruptcy research or assert a judicial estoppel argument to the district court.

47. On August 25, 2022, the Notice of Appeal divested the district court of jurisdiction regarding the award of reinstatement.

48. Plaintiff filed a strong response in opposition to the Motion to Stay reinstatement pending appeal on August 29, 2022. Plaintiff's response highlighted lack of legitimate legal foundation for Defendant's appeal and its low likelihood of appellate success on the grounds moved.

49. In response, Defendant grew concerned that: (1) it had a low likelihood of having a stay pending appeal granted in its favor; and (2) it would have to permit Plaintiff to return to MNPS in September 2022 pursuant to the August 18th Reinstatement Order.

50. In response to Plaintiff's protected expressions in August and as a last-ditch attempt to dodge reinstatement, Defendant researched bankruptcy filings for the first time and raised a judicial estoppel claim to extinguish all awarded legal remedies retroactively in its Reply brief and other related-pleadings.

51. Defendant's legal maneuvers were not timely or the product of good-faith litigation defense, rather were motivated by unlawful animus with unclean hands in response to protected acts performed by Plaintiff post-employment/post-trial.

52. MNPS and its legal representatives were not motivated to research Plaintiff's bankruptcy filings or make an argument of judicial estoppel: (1) prior to the Reinstatement Order; and Plaintiff's protected acts in August 2022 in pursuit of awarded legal remedies.

53. MNPS/Metro weaponized belated bankruptcy research and abused the legal process to: (1) exploit the doctrine of judicial estoppel as a technical defense to derail Plaintiff's proven meritorious claims; and (2) deny Plaintiff awarded legal remedies in retaliation for the exercise of her rights.

54. But-for Plaintiff's opposition to unlawful practices and/or her expression of intent to be reinstated as an entitled right under Title VII, MNPS would have never researched

bankruptcies or weaponized the legal process to deprive Plaintiff of the remedies awarded as a result of her successful pursuit of *McGruder I*.

55. Metro/MNPS performed post-and-prospective employment actions against Plaintiff that are actionable and would certainly dissuade a reasonable employee from exercising rights afforded under Title VII.

56. The stated reasons for Defendant's actions are false and a pretext for retaliation.

57. Defendant's post-and-prospective employment misconduct has cause Plaintiff to *again* suffer severe professional, economic, and emotional harms; suffer substantial loss of income and other privileges of employment; suffer embarrassment, humiliation, emotional distress, mental anguish, stress, anxiety, exacerbation of medical conditions, damage to her reputation, inconvenience, and loss of enjoyment of life. Plaintiff has also incurred astronomical attorney's fees, costs, and related litigation expenses as a product of Defendant's continued retaliatory acts.

58. Plaintiff's prior bankruptcy is now closed. With this Complaint, she does not hide the existence of her prior bankruptcy. She has communicated the substance and existence of this action to the former bankruptcy Trustee. Plaintiff moves this action with the trustee and bankruptcy processes involvement and awareness.

## CAUSES OF ACTION

### Title VII (Retaliation)

59. Plaintiff incorporates by reference all preceding paragraphs of the Complaint as if set forth fully herein.

60. Plaintiff repeatedly expressed opposition to Defendant's unlawful employment practices, delivered written correspondence expressing an intent to exercise an entitled right under

9

Case 3:23-cv-01323    Document 1    Filed 12/14/23    Page 9 of 11 PageID #: 9

Title VII as protected activity, and otherwise exercised her right to pursue vindication of violations of Title VII in the legal system post-termination from 2016 through 2022.

61. In response, Defendant targeted Plaintiff with hostile communications, bad faith acts to deprive Plaintiff of entitled legal remedies, refusals-to-hire or honor reinstatement orders of the district court, abuse of legal process and government resources under improper motives and with unclean hands.

62. Again, MNPS/Metro violated Plaintiff's rights under Title VII.

63. Defendant's actions cause Plaintiff to suffer monetary and nonmonetary damages.

64. Plaintiff is entitled to an award of backpay and benefits, compensatory damages, injunctive and equitable relief, declaratory judgment, reinstatement, attorney's fees and costs, or other appropriate damages or remedies available under state and federal law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that:

1. Process issue against the Defendant, requiring it to answer within the time period specific by applicable law;
2. That after the discovery process, this case be heard on its merits;
3. Plaintiff prays that the Court enter a judgment:
    a. Declaring that the acts and practices complained of herein are in violation of the aforementioned laws;
    b. Enjoining and permanently restraining these violations of aforementioned laws;
    c. Directing Defendant to take affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Plaintiff, or those similarly situated to Plaintiff, in employment opportunities;

d. Awarding Plaintiff a full award of back pay damages in amounts to be determined by the jury;

e. Awarding Plaintiff a substantial amount of front pay damages or reinstatement;

f. Awarding Plaintiff liquidated damages;

g. Directing Defendant to pay Plaintiff compensatory and/or punitive damages in an amount to be determined at trial, but to exceed $5,000,000.00.

h. Awarding Plaintiff the costs reasonable attorneys' fees as provided by the applicable statutes;

i. That the Court award any declaratory and/or injunctive relief that may be available; and

j. Granting such other and further relief as this Court deems necessary and proper.

Respectfully submitted,

/s Brian C. Winfrey
Brian C. Winfrey
THE WINFREY FIRM
613 Woodland St.
Nashville, TN 37206
BPR # 025766