# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| DR. EUNA McGRUDER, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | Case No. 3:23-cv-01323 |
| v. ) | |
| ) | Judge Aleta A. Trauger |
| METROPOLITAN GOVERNMENT ) | |
| OF NASHVILLE AND DAVIDSON ) | JURY DEMAND |
| COUNTY, ) | |
| ) | |
| *Defendant.* ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant Metropolitan Government of Nashville and Davidson County moves the Court, pursuant to Federal Rules of Civil Procedure 12(b)(6), to dismiss Plaintiff's Complaint because she failed to exhaust her administrative remedies and fails to allege a retaliatory adverse employment action.

Broadly speaking, this case arises out of Plaintiff's prior (and ongoing) litigation challenging her dismissal from Metro Nashville Public Schools ("*McGruder I*"). Several months after filing that case, Plaintiff sought Chapter 7 bankruptcy protection. She did not disclose *McGruder I* as an asset to the bankruptcy court, which ultimately discharged more than $100,000 of debt.

Now, however, Plaintiff alleges that Metro has acted in bad faith by exposing her actions. But her attempt to shift blame to Metro fails, as the acts she alleges support her single count of Title VII retaliation are nothing more than valid litigation tactics Metro took to defend *McGruder I*. As a matter of law, these acts cannot support a retaliation claim.

# FACTS

Metro Nashville Public Schools ("MNPS") hired Plaintiff as its Executive Officer of Priority schools shortly before the beginning of the 2015–16 school year. (Compl. ¶ 1.) She was later dismissed on January 15, 2016. (*Id.* ¶ 7.) Believing her dismissal to be unlawful, Plaintiff filed a lawsuit in the Middle District of Tennessee challenging her dismissal under Title VII on December 11, 2017. (*Id.* ¶ 10.)

Additionally, the effects of the dismissal caused Plaintiff to file for Chapter 7 personal bankruptcy on June 28, 2018—six months after filing McGruder I. (*Id.* ¶ 9; Pet. for Bankr., June 28, 2018, *In re McGruder*, Case No. 18-50740-lrc (Bankr. N.D. Ga.), ECF No. 1[1] (citations to the bankruptcy case will be abbreviated "Bankr. Dkt.").) She did not disclose McGruder I as an asset. (*See* Pet. for Bankr., Bankr. Dkt., ECF No. 1.) The bankruptcy case was closed on Oct. 8, 2018. (Order at 1, Oct. 8, 2018, Bankr. Dkt., ECF No. 16) More than $100,000 in debt was discharged. (Bankr. Dkt. at entry of Sept. 5, 2018.)

After four years of litigation—and continued non-disclosure to the bankruptcy court— *McGruder I* proceeded to trial in front of Judge Campbell on December 1, 2021. (Compl. ¶¶ 11, 14.) The jury returned a verdict in Plaintiff's favor on her Title VII retaliation claim and awarded her $260,000 in compensatory damages. (*Id.* ¶ 16.) The Court later awarded her $287,700 in attorneys' fees. (*Id.* ¶ 34.)

---

[1] The "court may consider exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (quotation omitted) (alteration in original). Indeed, a court "clearly may take judicial notice of other court proceedings without converting a motion to dismiss into one for summary judgment." *Miller v. Hurst*, No. 3:17-CV-00791, 2020 WL 5757907, at *6 (M.D. Tenn. Sept. 28, 2020) (citing *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010)) (Trauger, J.).

On December 14, 2021, Plaintiff filed a post-trial petition for the equitable remedy of reinstatement. (*Id.* ¶ 23; *McGruder v. Metro Government of Nashville*, Case No. 3:17-cv-01547 (M.D. Tenn.), ECF No. 82 (citations to the McGruder I docket will be abbreviated "McGruder I Dkt.") Metro filed a response in opposition on January 14, 2022,[2] (McGruder I Dkt. ECF No. 90), that contained "material misrepresentations of known facts to mislead the Court into denying Plaintiff's reinstatement position.[3]" (Compl. ¶ 27.)

Judge Campbell granted Plaintiff's petition on August 18, 2022, and ordered that she be reinstated within thirty days. (Compl. ¶ 37.) On August 22, 2022, she gave MNPS notice of her intent to return pursuant to the reinstatement order. (*Id.* ¶ 38.) One week later, on August 25, 2022, Metro appealed the order to the Sixth Circuit. (*Id.* at ¶ 42.) It also filed a motion to stay the reinstatement order pending resolution of the appeal in the trial court. (*Id.*) Soon after, Metro discovered that Plaintiff (1) had more than $100,000 in debt discharged in a bankruptcy proceeding filed after *McGruder I* had been filed, and (2) that she did not list the *McGruder I* as an asset in that proceeding. (*Id.* ¶ 50; Bankr. Dkt. ECF No. 16; Bankr. Dkt. at entry of Sept. 5, 2018.)

After discovering this information, Metro asked the Court of Appeals and Judge Campbell to invoke the doctrine of judicial estoppel and dismiss all of Plaintiff's claims.[4] (Compl. ¶¶ 50, 53). Judge Campbell granted Metro's motion to stay the reinstatement order

---

[2] A revised opposition was filed February 1, 2022. (*McGruder I* Dkt. ECF No. 101.)

[3] Metro denies that any employee of the Department of Law engaged in any wrongdoing.

[4] On August 31, 2022, Metro filed a Motion to Revise Orders pursuant to Fed. R. Civ. P. 54(b) asking the trial court to revise all post-verdict orders to reflect dismissal of Plaintiff's claims with prejudice. (McGruder I Dkt. ECF No. 124.) Its argument was based on judicial estoppel. (*See id.* ECF No. 126.) Judge Campbell denied the motion on September 9, 2002, for lack of jurisdiction due to Metro's appeal. (*Id.* ECF No. 131.)

pending resolution of the appeal on September 9, 2022 (*McGruder I* Dkt. ECF No. 132); the appeal remains pending.

## LEGAL STANDARD

To survive a motion brought under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege in a complaint "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As the Supreme Court reiterated in *Ashcroft v. Iqbal*, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (cleaned up).

Determining whether a complaint states a plausible claim for relief on its face is a context-specific exercise that requires a court to "draw on its judicial experience and common sense." *Id.* at 679 (citations omitted). Further, the tenet that a court must accept as true all the well-pleaded factual allegations contained in a complaint does not extend to legal conclusions: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citations omitted). A court need not accept as true a "legal conclusion couched as a factual allegation." *Id.* (citations omitted).

## ARGUMENT

Plaintiff asserts a single count for retaliation, though she bases the count on two separate protected activities. First, she alleges that Metro retaliated against her because, on December 14, 2021, she filed a petition seeking reinstatement. That protected action and the alleged retaliation to it, however, are not identified in her EECO charge. Second, she alleges that Metro retaliated against her because, on August 22, 2022, she gave notice that she planned to return to MNPS pursuant to the reinstatement order. But, as a matter of law,

{N0599306.1} 4

Case 3:23-cv-01323    Document 12    Filed 03/11/24    Page 4 of 17 PageID #: 42

none of the conduct Plaintiff identifies in response to either protected activity can support a retaliation claim. That is because the conduct was inherently tied to defending McGruder I, and it could (and should) be addressed by court rules. Accordingly, the Court should dismiss the Complaint.

I. **Because Plaintiff's Complaint Includes Factual Allegations Not Identified in Her EEOC Charge, She Has Not Exhausted Her Administrative Remedies in Relation to the Petition for Reinstatement.**

Plaintiff alleges that Metro's opposition to her petition for reinstatement "made material misrepresentations of known facts to mislead the Court into denying Plaintiff's reinstatement petition – which it had no right to do and constituted bad-faith and breach of its duty of candor to the court." (Compl. ¶ 27.) Because Plaintiff did not identify either the claimed protected action or alleged retaliatory conduct in her EEOC charge, she has not exhausted her administrative remedies, and the Court should dismiss her retaliation claim as premised on her petition for reinstatement.

Before filing a claim under Title VII, a plaintiff must exhaust her administrative remedies. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). To do so, she must file an EEOC charge that is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Id.* (quoting 29 C.F.R. § 1601.12(b)). The EEOC charge should be construed to encompass to include only those claims "'reasonably expected to grow out of the charge of discrimination.'" *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (quoting *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir.1992)).

"The Sixth Circuit instructs that courts generally require a broad reading of the charge because most Title VII claimants are unschooled in the technicalities of the law and proceed without counsel; if, however, a claimant is aided by counsel in preparing his charge, liberal construction is not necessary." *Berryman v. Supervalu Holdings, Inc.*, No. 3:05CV169,

2008 WL 696649, at *2 (S.D. Ohio Mar. 13, 2008) (cleaned up). "The question of whether a plaintiff has exhausted the administrative remedies, under Title VII, is a proper question for a court when considering a defendant's Rule 12(b)(6) motion to dismiss." *Id.* at *3.

Here, Plaintiff's retaliation claim premised on filing the petition for reinstatement must be dismissed because it is not identified in her EEOC charge:

> In January 2016, I was terminated by MNPS for investigating and opposing race discrimination and hostile work environment against teachers and students. In December 2021, a jury found that my termination was unlawful and awarded $260,000 in compensatory damages. I received several related judicial awards, which added hundreds of thousands of dollars in exposure and expenses to MNPS in 2022. On August 18, 2022, the Court ordered that I be reinstated to my former MNPS position. After the reinstatement order, I delivered MNPS correspondence expressing my intent to return to the school system in opposition to its earlier discrimination/retaliation pursuant to the Court's Reinstatement Order.
>
> In response to my expression of intent to exercise an entitled right (reinstatement), MNPS targeted me with a series of retaliatory acts including: (1) filing a frivolous appeal of my reinstatement award to the Sixth Circuit, without strong or solid legal foundation; (2) moving to stay my reinstatement pending its frivolous appeal with the district court; and (3) for the first time, performing bankruptcy research related to myself in order to dodge and evade the awards and remedies flowing from my successful prosecution of the prior discrimination and retaliation claims. The actions of MNPS and its agents were a subterfuge to dodge entitled and awarded legal remedies and in response to my opposition to discrimination & retaliation and expressed intent to return to MNPS. The actions of MNPS are post-termination retaliation and contain conduct that is an abuse of process and malicious prosecution. MNPS agents made clear in correspondence that its conduct was in response to the reinstatement order and my expression of intent to return to MNPS to vindicate my unlawful termination.
>
> I believe I have been retaliated against because of my race (Black), in violation of Title VII of the Civil Rights Act of 1964, as amended.

Pl.'s EEOC Charge at 1–2, Def.'s Mot. to Dismiss, Ex. A.

Instead, the charge focuses on a single protected activity: "expression of intent to exercise an entitled right (reinstatement)." *Id.* at 1. It then lists several ways that MNPS retaliated in response. *Id.* at 1–2. There is no mention of Plaintiff's petition for reinstatement or of any alleged misconduct related to it, only that "the Court ordered that [she] be reinstated to [her] former MNPS position." *Id.*

In other words, the EEOC would not have been on notice to investigate anything that occurred prior to the order of reinstatement (August 18, 2022) or Plaintiff's notice to MNPS

{N0599306.1}                                                                 6

Case 3:23-cv-01323   Document 12   Filed 03/11/24   Page 6 of 17 PageID #: 44

(August 22, 2022). But Plaintiff now seeks to assert a claim for a protected activity that occurred December 14, 2021, and alleged retaliatory conduct in early 2022. By Plaintiff's own characterization to the EEOC, however, all retaliatory conduct occurred months *after* that. Accordingly, allegations regarding the petition for reinstatement cannot be reasonably "reasonably expected to grow out of the charge of discrimination." *Randolph*, 453 F.3d at 732.

Thus, the Court should dismiss Plaintiff's retaliation claim based on filing the petition for reinstatement for failure to exhaust administrative remedies.

## II. Metro's Litigation Tactics Cannot form the Basis of a Retaliation Claim.

The litigation process is adversarial, and "no reasonable employee should expect that the employer-defendant would simply surrender in the face of litigation." *Sherman v. Fivesky, LLC*, No. 19-CV-8015 (LJL), 2020 WL 5105164, at *6 (S.D.N.Y. Aug. 31, 2020). With that in mind, "it will be the rare case in which conduct occurring within the scope of litigation constitutes retaliation" under Title VII. *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075–76 (7th Cir. 1998). This is not that rare case.

As the Seventh Circuit has explained, "litigation tactics for the most part will not give rise to actionable retaliation." *Id.* at 1076. Moreover, "judges are better able to supervise litigation tactics that proceed through the vehicle of the federal discovery rules, as opposed to those that proceed informally outside of the judicial process." *Id.* (citing *Auriemma v. Montgomery*, 860 F.2d 273, 278 (7th Cir. 1988). And, of course, "[d]efendants in discrimination suits must have some leeway to investigate possible defenses without undue fear of being subjected to additional liability in retaliation suits." *Id.* at 1077.

In *Steffes*, the plaintiff filed suit under Title VII after being dismissed. *Id.* at 1071. The defendant learned of the plaintiff's new employment through the discovery process. *Id.* at 1073–74. The defendant then called the new employer to verify the information. *Id.* During

the conversation, the defendant mentioned the pending lawsuit. *Id.* The plaintiff argued that the phone call was an adverse action sufficient to support a retaliation claim. *Id.* at 1074.

The Seventh Circuit disagreed. It rejected plaintiff's retaliation claim because the alleged "attempt to obstruct the litigation of the underlying discrimination complaint . . . is inseparable from the litigation of the claim. Accordingly, it is a matter to be resolved pursuant to court rules, not by Title VII." *Id.* (quoting *McKenzie v. Illinois Department of Transportation,* 92 F.3d 473, 486 (7th Cir.1996) (rejecting a retaliation claim based on defendant's instructions to the plaintiff's co-employees not to give affidavits or other assistance to help her with her sex discrimination claim because the conduct was better addressed by court rules)).

Federal courts across the country have adopted this framework to reject retaliation claims based on litigation tactics.[5] For example, a court in the District Court of Hawaii dismissed an ADA retaliation claim based on the defendant's litigation tactics in a workers' compensation proceedings, including appealing an adverse decision. *Salanoa v. Hawaiian Elec. Co.*, No. CV 21-00300 JMS-RT, 2022 WL 280936, at *15 (D. Haw. Jan. 31, 2022) ("[Defendant] is entitled as a matter of law to appeal an adverse decision, within the [administrative agency] and to the Hawaii Intermediate Court of Appeals if it so chooses."), *appeal dismissed*, No. 22-15296, 2023 WL 5554768 (9th Cir. June 23, 2023. Likewise, a court

---

[5] In *Steffes,* the Seventh Circuit discussed this rule in the context of the "litigation privilege"—"a doctrine that simply precludes actions taken in the adversarial setting of litigation and otherwise redressable through court process from supporting further litigation." *Probst v. Ashcroft*, 25 F. App'x 469, 471 (7th Cir. 2001). Whether viewed through the lens of a qualified privilege or not, the result is the same: allegedly impermissible litigation tactics that can be addressed by court rules do not form the basis of a retaliation claim.

in the Southern District of New York denied a motion to amend to add a retaliation claim arising from "litigation-related conduct," including legally serving a subpoena and seeking to amend an answer. *Sherman v. Fivesky, LLC*, No. 19-CV-8015 (LJL), 2020 WL 5105164, at *5 (S.D.N.Y. Aug. 31, 2020).

Further, a court in the Middle District of Florida recently dismissed a retaliation claim based on conduct that "occurred on the record in the course of administrative proceedings and subject to the oversight of the ALJ." *Makere v. Allstate Ins. Co.*, No. 3:20-CV-905-MMH-LLL, 2023 WL 4107107, at *10 (M.D. Fla. June 21, 2023).

And a court in the District of New Jersey rejected a plaintiff's contention that alleged perjury in an administrative hearing would support a retaliation claim where court rules would address any alleged impropriety. *Mamman v. Chao*, No. CIV.A. 06-2688 MLC, 2011 WL 1807521, at *6 (D.N.J. May 12, 2011). A court in the Eastern District of Pennsylvania did the same thing. *Lenahan v. Johnson*, No. CV 15-00763, 2016 WL 398024, at *2–3 (E.D. Pa. Feb. 1, 2016); *see also Franken v. McCarthy*, No. 2:19-CV-2172 AWI EPG, 2020 WL 2615021, at *4 (E.D. Cal. May 22, 2020) (stating "the general rule is that false or perjured testimony given as part of administrative proceedings or a trial does not constitute retaliation or discrimination for purposes of Title VII" (collecting cases)).

This Court should follow *Setffes's* widely accepted logic and dismiss Plaintiff's Complaint.[6]

---

[6] Metro has not found cases within the Sixth Circuit addressing whether litigation conduct that is subject court rules can form the basis of a retaliation claim. One court, however, has cited *Steffes* for the proposition that "Federal Courts have also recognized litigation privilege as a bar to some federal causes of action, especially when the actions at issue implicate an attorney's ability to advocate and conduct discovery on behalf of their clients." *Magnesium Mach., LLC v. Terves LLC*, No. 1:19 CV 2818, 2020 WL 3977689, at *4 (N.D. Ohio July 14, 2020), *aff'd*, No. 20-3779, 2021 WL 5772533 (6th Cir. Dec. 6, 2021). Though several cases in the Sixth Circuit address whether counterclaims can be retaliatory, they are not applicable to this case. *E.g., Carr v. TransCanada USA Servs., Inc.*, No. 3:14-CV-01084, 2014 WL

### A. As a Matter of Law, Metro's Response to Plaintiff's Motion for Reinstatement Cannot Support a Retaliation Claim.

Metro's response to Plaintiff's petition for reinstatement is not a retaliatory act. Rather, it is a routine part of litigation, overseen by Judge Campbell, that cannot be the basis of a new lawsuit. Plaintiff alleges that Metro's opposition to her petition for reinstatement "made material misrepresentations of known facts to mislead the Court into denying Plaintiff's reinstatement petition – which it had no right to do and constituted bad-faith and breach of its duty of candor to the court." (Compl. ¶ 27.) But as Plaintiff acknowledges, Metro had the right to oppose her petition for reinstatement. (*Id.*) The opposition is inseparable from the litigation of *McGruder I*.

Also, Plaintiff's allegations of Metro's "bad-faith and breach of its duty of candor to the court" could be addressed in front of Judge Campbell through a Rule 11 motion. *See Nam v. U.S. Xpress, Inc.*, No. 1:11-CV-116, 2012 WL 12840095, at *10 (E.D. Tenn. July 12, 2012) (stating that "a motion for sanctions pursuant to Rule 11 is the best vehicle for bringing . . . lack of candor arguments before this Court"). Indeed, Rule 11 directly addresses Plaintiff's allegation by allowing sanctions for any filing asserting "factual contentions" lacking evidentiary support.[7] *See* Fed. R. Civ. P. 11(b)(3), (c).

Raising the issue here, however, asks the Court to wade into "the unseemly situation that would be created if the Title VII judge had to evaluate the conduct of litigators before a different judge." *Baird v. Gotbaum*, 888 F. Supp. 2d 63, 74 (D.D.C. 2012), *aff'd*, 792 F.3d 166

---

6977651, at *3 (M.D. Tenn. Dec. 8, 2014); *Rosania v. Taco Bell of Am., Inc.*, 303 F. Supp. 2d 878, 889 (N.D. Ohio 2004).

[7] Courts have additional means to address improper behavior. *E.g.*, 28 U.S.C. § 1927 (allowing sanctions for "unreasonably and vexatiously" multiplying proceedings in a litigation); 18 U.S.C. § 401 (allowing sanctions for obstructing the administration of justice).

(D.C. Cir. 2015). Nothing in Title VII requires the Court to accept the invitation. *See id.* (rejecting plaintiff's contention that "adversarial actions in the litigation context" at a prior litigation—including conduct at a deposition and filing a sanctions motion—were retaliatory and recognizing that "courts have wisely found it is 'a matter to be resolved pursuant to court rules, not by Title VII'" (quoting *McKenzie*, 92 F.3d at 486)).

Accordingly, Metro's opposition to the petition for reinstatement is inherently tied to litigation, and any alleged misconduct could and should be addressed through court rules. Therefore, it is not sufficient to support a retaliation claim, and the Court should dismiss te Complaint premised on that conduct.[8] *See Nieman v. Grange Mut. Ins. Co.*, No. 12-3250, 2013 WL 173466, at *3 (C.D. Ill. Jan. 16, 2013) ("The Court further concludes that a response to the EEOC—even one that is alleged to contain false, misleading or incomplete information—does not form the basis of a retaliation claim because the letter was written during the course of litigation and in response to the Plaintiff's charge.").

### B.  As a Matter of Law, Metro's Alleged Conduct Challenging the Reinstatement Order Cannot Support a Retaliation Claim.

"Although the threat of a vigorous defense . . . might well cause an employee to think carefully about whether to start litigation, at all, that threat is not the 'retaliation' that Congress had in mind in crafting the retaliation provisions of Title VII." *Sherman*, 2020 WL 5105164, at *6. Here, Plaintiff alleges that, in response to the written notice of her intent to return pursuant to the reinstatement order, MNPS retaliated by (1) refusing to reinstate her;

---

[8] Additionally, Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington*, 548 U.S. at 67. Here, Plaintiff can allege no injury or harm. Not only was her petition ultimately granted, (Compl. ¶ 37), she did not expend effort replying to Metro's response in opposition. (*See generally McGruder I* Dkt.)

(2) ending settlement negotiations; (3) sending hostile communications, and; (4) initiating "frivolously-based legal maneuvers and abuses to deprive [her] of the legal remedies awarded in *McGruder I*." (Compl. ¶ 39.) But all of this conduct is inseparable from the litigation of *McGruder I*, and any alleged misconduct could be addressed through court rules. Accordingly, this conduct cannot support a retaliation claim.

Metro addresses Plaintiff's final allegation—that it "weaponized the legal process to rob Plaintiff of awarded legal remedies," (Compl. ¶ 40)—first. This allegation is the heart of Plaintiff's retaliation claim: Metro should not have discovered and disclosed her previous bankruptcy filing. And Plaintiff is right; she should have been forthcoming with the bankruptcy court about her Title VII lawsuit. But she was not, and she now argues that Metro should be liable for alerting the courts to her failure to follow bankruptcy rules. This cannot be the law, as, in addition to impeding Metro's lawful legal defense, such an argument disincentivizes employers from reporting potential fraud on the bankruptcy court.

Plaintiff's failure to disclose *McGruder I* to the bankruptcy court in not simply a technical error. As the Sixth Circuit has explained, "[T]he disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005) (alteration in original) (quotation omitted). And "[i]n a bankruptcy proceeding, a debtor must disclose all assets, including a potential cause of action." *Vaughn v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:12-CV-01320, 2014 WL 234200, at *3 (M.D. Tenn. Jan. 22, 2014) (Trauger, J.). "Because of the importance of the disclosure requirements to a bankruptcy proceeding, courts have consistently applied judicial estoppel to bar a bankruptcy debtor from later pursuing legal claims that were not disclosed in the bankruptcy proceeding." *Swartz v. Asurion Ins. Servs., Inc.*, No. 3:21-00335, 2021 WL

6754284, at *3 (M.D. Tenn. Sept. 8, 2021) (collecting cases), *report and recommendation adopted*, No. 3:21-CV-00335, 2022 WL 275514 (M.D. Tenn. Jan. 27, 2022) (Trauger, J.).

To recap, Metro lawfully and timely appealed the reinstatement order and lawfully and timely filed its motion to stay. Metro then discovered that Plaintiff had failed to disclose *McGruder I* as an asset to the bankruptcy court, and that, prior to the resolution of *McGruder I*, her bankruptcy estate had been closed, discharging more than $100,000 in debt. Metro then lawfully and timely raised this issue with both Judge Campbell and the Sixth Circuit, asking them to invoke judicial estoppel. And though Plaintiff cannot dispute that she failed to timely disclose *McGruder I* to the bankruptcy court, she seeks to punish Metro for bringing her failure to abide by the rules—which may extinguish her trial awards—to light. Plaintiff's argument must fail. *See Salanoa*, 2022 WL 280936, at *15 (finding that, as a matter of law, a lawfully-taken appeal did not support a claim for retaliation).

Plaintiff attempts to color Metro's litigation conduct with phrases like "bad faith" and "unclean hands," she musters nothing more than conclusory statements to support such allegations. (*See* Compl. ¶¶ 40–55.) To the extent she seeks an inference of bad faith based on the relatively brief time between informing MNPS of her intent to return and Metro's legal filings, no inference can be found, as Metro had to act promptly lest it violate the thirty-day time limit in the reinstatement order. Further, the Sixth Circuit has rejected Plaintiff's contention that Metro's judicial estoppel arguments were untimely at this stage of the litigation. (Order at 3, May 19, 2023, *McGruder v. Metro. Gov't of Nashville & Davidson Cty.*, Case No. 22-5761 (6th Cir.), ECF No. 35 ("McGruder's motion to dismiss hinges on whether the doctrine of judicial estoppel can be raised for the first time on appeal. Contrary to McGruder's position, the doctrine may be raised for the first time on appeal.").)

And again, as explained in Section II.A, *infra,* courts have recognized that allegations of litigation misconduct "are more appropriately addressed pursuant to court rules by the presiding judge" rather than being presented to a new judge via a retaliation claim. *Makere*, 2023 WL 4107107, at *10 (M.D. Fla. June 21, 2023) (collecting cases). Any allegations regarding Metro's filings with Judge Campbell or the Sixth Circuit could and should be handled by those judges. For these reasons, Metro's lawful ad timely requests for judicial estoppel cannot form the base of a retaliation claim.

As to the three remaining allegations, Metro will address them in order. Plaintiff alleges no facts that Metro refused to reinstate her. Judge Campbell granted her petition for reinstatement on August 18, 2022, and gave Metro thirty days to comply. Metro timely exercised its right to appeal the order. Additionally, Judge Campbell granted Metro's motion to stay reinstatement on September 9, 2022—prior to the expiration of the thirty-day reinstatement window. (*McGruder I* Dkt. ECF No. 132). Accordingly, Plaintiff has not alleged facts that show Metro refused to reinstate her in violation of Judge Campbell's order.

Next, ending settlement negotiations after a change in a case's posture is not a materially adverse employment action. In general, parties are not required to engage in settlement discussions, let alone come to resolution. Metro's conduct cannot support a retaliation claim. *See Nieman v. Grange Mut. Ins. Co.*, No. 12-3250, 2013 WL 173466, at *3 (C.D. Ill. Jan. 16, 2013) (stating "[t]here can be little question that an offer to settle litigation—even an offer that one party may find to be outrageous and/or personally offensive—constitutes a litigation tactic" that cannot form the basis of a retaliation claim).

Finally, as to alleged hostile communications, Plaintiff identifies none. Indeed, the only communication she identifies carries no indication of hostility: "We're not going to be able to work out a settlement. Whatever chances there were earlier just got blown up by the court's order of reinstatement last week. We're going to seek an immediate appeal of that

{N0599306.1}                                14

Case 3:23-cv-01323   Document 12   Filed 03/11/24   Page 14 of 17 PageID #: 52

decision . . . ." (Compl. ¶ 41.) As a matter of law, such communications cannot be seen as "dissuad[ing] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Further, any communications between the parties regarding *McGruder I* are inherently tied to that litigation and cannot serve as the basis for a retaliation claim.

For these reasons, Metro's conduct challenging the order of reinstatement cannot, as a matter of law, support a retaliation claim. Accordingly, the Court should dismiss the Complaint as to that conduct.

## CONCLUSION

Plaintiff fails to adequately plead any claim for retaliation under Title VII. First, she failed to exhaust her administrative remedies with respect to alleged retaliatory conduct regarding the filing of her petition for reinstatement. Further, every alleged retaliatory act identified in the Complaint occurred within the scope of defending *McGruder I*. Any alleged misconduct could and should be addressed by the presiding judges of the courts where that conduct occurred. For these reasons, the Court should dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,

DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
WALLACE W. DIETZ (BPR No. 9949)
DIRECTOR OF LAW

*/s/ John K. Whitaker*
JOHN K. WHITAKER (BPR NO. 39207)
  SENIOR COUNSEL
BREANNE HATAWAY (BPR NO. 35174)
SAMUEL D. KEEN (BPR NO. 33865)
  ASSISTANT METROPOLITAN ATTORNEYS
Metropolitan Courthouse, Suite 108
P.O. Box 196300

Nashville, Tennessee 37219
(615) 862-6341
john.whitaker@nashville.gov
breanne.hataway@nashville.gov
samuel.keen@nashville.gov

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing has been served via CM/ECF to:

Brian C. Winfrey (BPR No. 25766)
THE WINFREY FIRM
613 Woodland Street
Nashville, Tennessee 37206

*Counsel for Plaintiff*

on March 11, 2024.

/s/ *John K. Whitaker*
John K. Whitaker